# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | | |
|---|---|---|
| **MICHAEL SHANE SMITH** | * | **CIVIL ACTION NO.  17-0401** |
| **VERSUS** | * | **JUDGE TERRY A. DOUGHTY** |
| **NANCY A. BERRYHILL, ACTING COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAG. JUDGE KAREN L. HAYES** |

### REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits.  The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice**.**

### Background & Procedural History

Michael Shane Smith protectively filed the instant application for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income payments on May 19, 2014, and March 7, 2014.  (Tr. 21, 152-169).  He alleged disability as of February 1, 2012, because of arthritis in his right knee and elbows, plus chronic pain in the lumbar spine, elbows, and right knee.  (Tr. 182, 203).  The state agency denied the claims at the initial stage of the administrative process.  (Tr. 66-87, 90-93).  Thereafter, Smith requested, and received an October 21, 2015, hearing before an Administrative Law Judge ("ALJ").  (Tr. 33-65).  However, in a January 22, 2016, written decision, the ALJ determined that Smith was not disabled under the Social Security Act, finding at step five of the sequential evaluation process that he was able to make an

adjustment to work that exists in significant numbers in the national economy.  (Tr. 18-29).

Smith appealed the adverse decision to the Appeals Council.  On January 12, 2017, however, the

Appeals Council denied Smith's request for review; thus, the ALJ's decision became the final

decision of the Commissioner.  (Tr. 1-3).

On March 15, 2017, Smith filed the instant complaint for judicial review of the

Commissioner's decision.  He alleges the following errors:

1)    the ALJ's residual functional capacity assessment is not supported by substantial
      evidence because the ALJ erred in her credibility determination; and

2)    the ALJ's step five finding is tainted because she relied on vocational expert
      testimony without addressing plaintiff's post-hearing objections to the vocational
      expert's testimony.

Following the submission of briefs, the matter is ripe.

**<u>Standard of Review</u>**

This court's standard of review is (1) whether substantial evidence of record supports the

ALJ's determination, and (2) whether the decision comports with relevant legal standards.  *Villa*

*v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).  Where the Commissioner's decision is

supported by substantial evidence, the findings therein are conclusive and must be affirmed.

*Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's decision is not supported

by substantial evidence when the decision is reached by applying improper legal standards.

*Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986).  Substantial evidence is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v.*

*Perales*, 402 U.S. at 401.  Substantial evidence lies somewhere between a scintilla and a

preponderance.  *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).  A finding of no substantial

evidence is proper when no credible medical findings or evidence support the ALJ's

determination.  *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).  The reviewing court

may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted).

## **Determination of Disability**

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability.  *See* 42 U.S.C. § 423(a)(1)(D).  The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work.  *See* 42 U.S.C. § 423(d)(2)(A).  Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows,

(1)    An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2)    An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3)     An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4)    If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5)    If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See Boyd v. Apfel,* 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

### The ALJ's Findings

**I.    Steps One, Two, and Three**

The ALJ determined at step one of the sequential evaluation process that Smith did not engage in substantial gainful activity during the relevant period. (Tr. 23). At step two, she found that he suffered severe impairments of osteoarthritis of the lumbar spine; hyperlipidemia; chronic obstructive pulmonary disease; coronary artery disease; bursitis of the elbow; bilateral degenerative joint disease of the knees; history of meniscus tear of the right knee, status post-repair and arthroscopy; and ankylosis of the right knee. (Tr. 23-24). She concluded, however, that the claimant's impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process. (Tr. 24).

## II.    Residual Functional Capacity

The ALJ next determined that Smith retained the residual functional capacity ("RFC") to perform sedentary work,[1] except that he was limited to standing and/or walking no more than four hours in an eight hour day, with the ability to no more than occasionally climb, kneel, crouch, crawl, or stoop.  (Tr. 24-26).

## III.    Steps Four and Five

At step four, the ALJ employed a vocational expert ("VE") to find that Smith was unable to perform his past relevant work.  (Tr. 27).  Accordingly, she proceeded to step five.  At this step, the ALJ determined that the claimant was a "younger" individual, with a limited education, and the ability to communicate in English.  (Tr. 27-28).  Transferability of skills was not material to the decision.  *Id*.

The ALJ then observed that given the claimant's vocational factors, and if he had an RFC that did not include any non-exertional limitations, the Medical-Vocational Guidelines would direct a finding of not disabled.  20 C.F.R. § 404.1569; Rules 201.25, Table 1, Appendix 2, Subpart P, Regulations No. 4.  (Tr. 27-28).  However, because the claimant's RFC ostensibly included non-exertional limitations,[2] the ALJ consulted the VE to determine whether, and to what extent the additional limitations eroded the occupational base for sedentary work.  *Id*.  In

---

[1]  Sedentary work entails:
> . . . lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. 404.1567(a).

[2]  *See* discussion, *infra*.

response, the VE identified the representative job of polisher, *Dictionary of Occupational Titles* ("DOT") Code # 713.684-038; clip loading machine feeder, DOT Code # 684.686-010; and order clerk, DOT # 209.567-014, that were consistent with the ALJ's RFC and the claimant's vocational profile. (Tr. 27-28, 59).[3]

## Analysis

### I.    RFC/Credibility

Plaintiff challenges the ALJ's RFC assessment on the limited grounds that her credibility determination was defective because she failed to consider pertinent factors, and made speculative inferences regarding plaintiff's failure to procure medication for a period of time.

The court observes that when assessing credibility, the ALJ is required to consider the objective medical evidence, the claimant's statements, the claimant's daily activities, and other relevant evidence. POLICY INTERPRETATION RULING TITLES II AND XVI: EVALUATION OF SYMPTOMS IN DISABILITY CLAIMS: ASSESSING THE CREDIBILITY OF AN INDIVIDUAL'S STATEMENTS, SSR 96-7P (S.S.A July 2, 1996).[4]  Furthermore,

[t]he finding on the credibility of the individual's statements cannot be based on

---

[3]  The VE testified that for the polisher job, there existed 70,000 positions nationally and 350 in Louisiana.  (Tr. 59).  For the clip loading machine feeder job, there were 104,000 positions nationwide, and 1,020 in Louisiana.  *Id.*  Moreover, for the order clerk job, there were 190,000 positions nationally, and 1,200 in Louisiana.  *Id.*

This incidence of work constitutes a significant number of jobs in the "national economy."  42 U.S.C. § 423(d)(2)(A); *Johnson v. Chater*, 108 F.3d 178, 181 (8th Cir. 1997) (200 jobs at state level and 10,000 nationally, constitute a significant number).

[4]  The Commissioner issued a new ruling that superseded and rescinded SSR 96-7p, effective March 28, 2016.  *See* SSR 16-3p, 2016 WL 1119029.  The purpose of the new ruling is to eliminate the use of the term "credibility" in the agency's sub-regulatory policy because the regulations do not use the term.  However, SSRs are not effective until publication. https://www.ssa.gov/OP_Home/rulings/rulings-pref.html (last visited July 17, 2018). Accordingly, the court will consider the ruling that was in effect at the time of the ALJ's decision.

an intangible or intuitive notion about an individual's credibility. The reasons for
the credibility finding must be grounded in the evidence and articulated in the
determination or decision. It is not sufficient to make a conclusory statement that
"the individual's allegations have been considered" or that "the allegations are (or
are not) credible."  It is also not enough for the adjudicator simply to recite the
factors that are described in the regulations for evaluating symptoms.  The
determination or decision must contain specific reasons for the finding on
credibility, supported by the evidence in the case record, and must be sufficiently
specific to make clear to the individual and to any subsequent reviewers the
weight the adjudicator gave to the individual's statements and the reasons for that
weight. This documentation is necessary in order to give the individual a full and
fair review of his or her claim, and in order to ensure a well- reasoned
determination or decision.

*Id*.

The regulations also specify that assessment of the credibility of an individual's

statements about pain or other symptoms and their effects on functional capacity must be based

on a consideration of all of the evidence in the case record, including such considerations as,

(i)      Your daily activities;

(ii)     The location, duration, frequency, and intensity of your pain or other symptoms;

(iii)    Precipitating and aggravating factors;

(iv)     The type, dosage, effectiveness, and side effects of any medication you take or
have taken to alleviate your pain or other symptoms;

(v)      Treatment, other than medication, you receive or have received for relief of your
pain or other symptoms;

(vi)     Any measures you use or have used to relieve your pain or other symptoms (e.g.,
lying flat on your back, standing for 15 to 20 minutes every hour sleeping on a
board, etc.); and

(vii)    Other factors concerning your functional limitations and restrictions due to pain
or other symptoms.

20 C.F.R. § 404.1529(c)(3).

Furthermore, the ALJ may consider such factors as the consistency of the claimant's statements,

the medical evidence, the medical treatment history, other sources of information, and

7

observations of the individual.  (SSR 96-7P).[5]

The foregoing notwithstanding, the ALJ need not follow formalistic rules in her credibility assessment.  *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).  Moreover, the ALJ's decision regarding the credibility of plaintiff's complaints of pain is entitled to considerable judicial deference if supported by substantial evidence.  *James v. Bowen*, 793 F.2d 702, 706 (5th Cir. 1986); *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991).

The ALJ complied with the regulatory requirements in this case.  She recited the hearing testimony provided by plaintiff.  (Tr. 24-26).  Moreover, she found that plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms . . ." *Id*.  Ultimately, however, she determined that plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible for reasons set forth in the decision.  *Id*.

Specifically, the ALJ noted an instance in the medical record where plaintiff stated that he had no insurance, and had not purchased medication in a long time.  (Tr. 26, 459).  She noted that there were health care resources available for the indigent, and consequently, if plaintiff's impairments *were* as severe as alleged, then he would have taken advantage of these resources. *Id*.

Plaintiff contends that the ALJ erred in her inference because there was no evidence that health care options were available to plaintiff, and, in any event, she failed to question him about this issue at the hearing.  However, the record *does* contain evidence that there are medication assistance programs in the area.  (Tr. 460).  In fact, in March 2015, a social worker specifically

---

[5] Although social security rulings are not binding on the federal courts, *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001), they are "binding on all components of the Social Security Administration."  20 C.F.R. § 402.35(b)(1).

advised plaintiff of these resources.  *Id.*  Also, plaintiff was well aware of health resources available to the uninsured because, when needed, he frequented such facilities.  *See e.g.*, Tr. 459.[6]  Finally, the ALJ expressly raised this issue with plaintiff at the hearing.  (Tr. 53-54).  In response, plaintiff attributed his failure to procure medication to his inability to afford to see a doctor to obtain medication.  *Id.*

Although not emphasized by the ALJ in her decision, the record contains other instances where plaintiff's statements were less than consistent.  Most significantly, at least for purposes of his RFC, was plaintiff's September 4, 2014, candid admission to medical personnel that, before he had chest pain (which started the previous Sunday), he had been "able to ambulate freely without difficulty."  (Tr. 401).  Obviously, this statement conflicts with plaintiff's presentation to the consultative physician only one month earlier.  *See* Tr. 342-344.  Moreover, it provides substantial support for the ALJ's decision to discount the consultative physician's finding that an assistive device appeared to be medically necessary.  (Tr. 26).[7]

Plaintiff also did not consistently represent the extent of his alcohol use.  For instance, he told the consultative physician on August 7, 2014, that he did not consume alcohol.  (Tr. 341).  Less than one month later, however, he was counseled on alcohol and tobacco abuse.  (Tr. 404).  On October 29, 2014, plaintiff admitted that he still drank a significant amount of alcohol every day.  (Tr. 432).  By March 2015, plaintiff acknowledged that he consumed approximately one-half to three-quarters of a fifth of vodka per day since his teenage years.  (Tr. 450).  Inexplicably,

---

[6]  Plaintiff further complains that the ALJ transgressed Social Security Ruling 96-7p by failing to afford him an opportunity to explain his failure to procure medication for a period of time.

[7]  The consultative physician's findings otherwise provide substantial evidence to support the ALJ's RFC.  *See* Tr. 26, 346.

just seven months later, plaintiff told the ALJ that he drank only once or twice a week.  (Tr. 56). These inconsistencies, while certainly not dispositive and perhaps understandable under the circumstances, nonetheless provide further support for the ALJ's credibility determination.

In sum, the court finds that the ALJ's credibility determination satisfied the requirements of 20 C.F.R. § 404.1529, and is supported by substantial evidence.  *See Giles v. Astrue*, 433 Fed. Appx. 241, 249 (5th Cir.2011) (ALJ satisfied the requirements for supporting his credibility finding by discussing the medical records and opinions); *Herrera v. Comm'r of Soc. Sec.*, 406 Fed. Appx. 899, 905–06 (5th Cir.2010) (ALJ complied with SSR 96-7p by thorough consideration and discussion of the relevant medical evidence); *Undheim v. Barnhart*, 214 Fed. Appx. 448 (5th Cir. Jan. 19, 2007) (opinion as a whole gave sufficient reasons and documentation for the ALJ's credibility determination); *Cornett v. Astrue*, 261 Fed. Appx. 644 (5th Cir. Jan. 3, 2008) (ALJ gave some weight to claimant's complaints; thus claimant's arguments that his subjective complaints were not given enough weight is unavailing);  *Hernandez v. Astrue*, 2008 WL 2037273 (5th Cir. May 13, 2008) (despite claimant's subjective allegations of pain, the ALJ gave "greatest weight" to treating physician's opinion).

The undersigned further concludes that the ALJ's residual functional capacity assessment is supported by substantial evidence.

## II.     Step Five/Objection to Vocational Expert Testimony

Plaintiff contends that the ALJ committed reversible error in her step five determination because she failed to address plaintiff's post-hearing objection to the vocational expert ("VE") testimony.  In his post-hearing brief to the ALJ, plaintiff objected to the VE's testimony regarding the incidence of work for the jobs he identified in response to the ALJ's hypothetical. Specifically, plaintiff argued, *inter alia*, that:  1) nothing in the record established that the VE

had the necessary expertise to provide an opinion on job numbers; 2) although the VE stated that

he obtained his figures from the Occupational Employment Survey ("OES"), there is no direct

correlation between the OES and DOT codes; 3) the VE failed to explain how he reached his

conclusions regarding incidence of work; and 4) the jobs identified by the VE are no longer

performed at the unskilled level, pursuant to current labor market data.  (Tr. 254-257).

In her decision, the ALJ documented the claimant's objection to the VE's "response to

the occupations and numbers cited . . ."  (Tr. 28).  She observed, however, that the VE "is

deemed a qualified expert by, and approved to participate in disability hearings with the Social

Security Administration."  *Id.*

Plaintiff contends that the ALJ's resolution of her objection did not comply with the

Commissioner's Hearings, Appeals and Litigation Law Manual ("HALLEX"), which requires

the ALJ to "rule on the objection and discuss any ruling in the decision."  (HALLEX § I-22-5-55

(2016)).[8]  In other words, according to plaintiff, the ALJ erred by failing to substantively address

his objections to the VE's testimony, and thereby effectively decided on her own that the issues

would not have changed the VE's opinion.  *See e.g.*, Pl. Brief, pg. 8.  Without so stating, it

appears that plaintiff would have had the ALJ hold a supplemental hearing so plaintiff could

pursue this line of inquiry with the VE that he originally eschewed.

Initially, the court observes that the Fifth Circuit does not condone plaintiff's tactics in

this case:

> claimants should not be permitted to scan the record for implied or unexplained
> conflicts between the specific testimony of an expert witness and the voluminous
> provisions of the DOT, and then present that conflict as reversible error, when the

---

[8]  Apparently, HALLEX § I-2-5-55 was rescinded in June 2016 – after the date of the
ALJ's decision.  However, HALLEX § I-2-6-74(B) replaced § I-2-5-55, and it too requires the
ALJ to rule on objections.

conflict was not deemed sufficient to merit adversarial development in the
administrative hearing.
*Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000).

In his brief, plaintiff argued that it was impractical or impossible to address the issues he
raised in his post-hearing brief at the time of the administrative hearing, not only because of
hearing time constraints, but also because of the copious provisions of the DOT. (Pl. Brief, pg.
10 n. 4). However, there is no indication that the ALJ restricted plaintiff's representative from
further questioning the VE at the hearing. Moreover, plaintiff's principal thrust was that the
Department of Labor's Bureau of Labor Statistics ("BLS") does not publish job numbers by
DOT code, but by Standard Occupation Classification Codes ("SOC"), and the two regimes are
not equivalent.[9] However, since at least 2014, plaintiff's representative's firm, Citizens
Disability, L.L.C., has known that the BLS is unaware of any data source or methodology for
reliably translating the number of jobs from SOC codes to DOT codes. (Tr. 259-260).
Therefore, it was not necessary for plaintiff's representative to familiarize herself with each of
the 12,000 jobs of the DOT to question the VE about his methodology. Thus, there is no reason
why the representative could not have asked the VE about the basis for his opinions at the
hearing.[10]

Indeed, at the hearing plaintiff's representative asked the VE to disclose his source for his
job numbers. (Tr. 62-63). Nonetheless, after the VE responded, the representative inexplicably
failed to ask him how he was able to correlate those figures with DOT codes. *Id*. Instead,
plaintiff opted to reserve the issue for a post-hearing brief, likely cognizant that some ALJs may

[9] There are 840 SOC codes, whereas the DOT has 12,000 codes. (Tr. 255).

[10] Plaintiff also could have advised the ALJ in his pre-hearing brief that he intended to
challenge the VE's testimony on job incidence because there was no obvious way to correlate
job numbers from the SOC with the DOT. (Tr. 247-252).

12

be reluctant to schedule a supplemental hearing to address the matter, thus assuring an issue for appeal.

Courts are split regarding their resolution of similar iterations of the present issue. Some have remanded for further proceedings, *see Sams v. Berryhill*, No. 17-0015, 2017 WL 3974239, at *8 (N.D. Fla. Sept. 8, 2017); *Smith v. Astrue*, No. 13-0366, 2014 WL 2112030, at *15 (W.D. La. May 8, 2014); some have not, *see James v. Colvin*, No. 16-470, 2017 WL 4185479, at *13 (M.D. La. Sept. 21, 2017); *Moffit v. Berryhill*, No. 17-4015, 2018 WL 276770, at *6 (D. Kan. Jan. 3, 2018).

Be that as it may, it is clear that "where the rights of individuals are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise would be required. If prejudice results from a violation, the result cannot stand." *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000) (citations and internal quotation marks omitted). Similarly, an ALJ's omission does not require remand unless it affected the claimant's substantial rights. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). Moreover, insofar as plaintiff contends that the ALJ violated his due process rights by not affording him the opportunity to cross-examine the VE a *second* time, plaintiff still must demonstrate resulting prejudice. *Curtis v. Commissioner Social Sec. Admin.*, 2008 WL 919692 (W.D. La. Feb. 27, 2008) (citing *Ka Fung Chan v. INS*, 634 F.2d 248, 258 (5th Cir.1981) (must show substantial prejudice in order to prove denial of due process in an administrative proceeding)).

Here, plaintiff has not established cognizable prejudice. At the hearing, plaintiff interposed no objections to the VE's qualifications. (Tr. 57). Moreover, the VE stated more than once that his opinions were premised, at least in part, on his 30 years of experience working with employers. (Tr. 63-64). In response to the ALJ's hypothetical, the VE identified several

jobs, with a significant incidence of work available for each.  (Tr. 59).  Moreover, the Fifth

Circuit has declined to find reversible error even where the VE failed to list any available jobs or

their incidence at all.  *Derise v. McMahon*, 222 Fed. Appx. 419 (5th Cir.2007).

The court further observes that VE testimony was not even required in this case.  Non-

exertional impairments that do not significantly impact the occupational base for work do not

preclude use of the guidelines.  *See Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987)

(citations omitted) (when a claimant's non-exertional impairments do not significantly affect her

residual functional capacity, the ALJ may rely exclusively on the Guidelines); *see also Crowley*

*v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999); *Selders v. Sullivan*, 914 F.2d 614, 618-619 (5th Cir.

1990).

Here, the ALJ found that plaintiff retained the RFC for sedentary work, with limitations.

However, the additional limitations imposed by the ALJ do not significantly erode the capacity

for sedentary work.  *See* SSR 96-9p.[11]  Given plaintiff's vocational factors, and with an RFC for

sedentary work, the Medical-Vocational Guidelines direct a finding of not disabled.  20 C.F.R. §

416.969; Rule 201.25, Table 1, Appendix 2, Subpart P, Regulations No. 4 (Tr. 27).  Indeed,

"[w]hen the medical-vocational rules were promulgated, administrative notice was taken of the

fact that it was possible to identify, at the unskilled level, approximately 200 sedentary

occupations . . ."  TITLES II AND XVI:  DETERMINING CAPABILITY TO DO OTHER WORK--THE

MEDICAL-VOCATIONAL RULES OF APPENDIX 2, SSR 83-10 (S.S.A July 2, 1996).  Accordingly,

any error related to the VE's testimony was harmless.  *Barlow v. Sec'y, Health & Human Servs.*,

---

[11]  "Postural limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work."  *Id.*  Similarly, only the occasional ability to stoop is required at the sedentary level.  *Id.*

29 F.3d 624 n.2 (5th Cir.1994) (because the ALJ was entitled to rely exclusively on the Guidelines, he was not required to ask the VE whether plaintiff could perform jobs which existed in the national economy).

## Conclusion

The Commissioner in this case was tasked with determining whether plaintiff was disabled.  In so doing, she considered the claimant's testimony, the medical record, and expert opinion evidence.  The evidence by no means was uniform and could have supported a different outcome.  Such conflicts in the evidence, however, are for the Commissioner to resolve.  *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (citation omitted); *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971) (citation omitted).  This court may not "reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision."  *Newton, supra*.  That is not to say that the Commissioner's decision is blemish-free, but procedural perfection in the administrative process is not required, and any errors do not undermine confidence in the decision.  *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988).[12]

For the foregoing reasons, the undersigned finds that the Commissioner's determination that the claimant was not disabled under the Social Security Act, is supported by substantial evidence and remains free of legal error.  Accordingly,

IT IS RECOMMENDED that the Commissioner's decision be AFFIRMED, in its entirety, and that this civil action be DISMISSED with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have

---

[12]  Procedural improprieties "constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir.1988).

**fourteen  (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 19th day of July 2018.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE

16